UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CURTIS R. HOOD, SR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 15 C 7945 |
| v. ) | |
| ) | Judge Sara L. Ellis |
| OFC. JACQUELINE SMITH and LAKE ) | |
| COUNTY, ILLINOIS, ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

Plaintiff Curtis Hood alleges that an attack in his cell at Lake County Jail in Lake County, Illinois injured his finger. Hood does not yet know the identity of the wrongdoer, but he alleges that while he was a pretrial detainee either an inmate collecting food trays from the opening in his cell door (called a "chuckhole") or the guard overseeing the inmates slammed the chuckhole's door onto Hood, breaking and partially severing his finger. Hood brings claims against the guard, Defendant Jacqueline Smith, and her employer, Defendant Lake County, for violations of 42 U.S.C. § 1983. Smith and Lake County move to dismiss Hood's Second Amended Complaint. The Court denies in part and grants in part the motion [50]. Hood sufficiently states his claims against Smith, and the Court cannot find, at this time, that Smith is entitled to qualified immunity. Hood admits, however, that his § 1983 claim against Lake County should be against Lake County's Sheriff instead, so the Court dismisses that claim. But the Court does not dismiss the County in full because Hood's claims against Smith allow his indemnification claim to stand.

# BACKGROUND[1]

Hood was held as a pretrial detainee in a single-inmate cell at Lake County Jail. Each cell in Hood's cell block had a full-length, transparent door with a chuckhole in the middle for passing food in and out of the cell. The chuckholes were three to four inches thick, made of metal, and weighed several pounds, and Lake County Jail required them to be locked except during mealtimes.

Smith, a correctional officer at Lake County Jail, was assigned alone to Hood's cellblock during breakfast. Policy allowed Smith and other correctional officers to assign inmates to distribute and collect trays containing meals to each cell. Smith unlocked all the cells' chuckholes and then allowed two inmates, Douglas Alexander and Andre Mason, to distribute meal trays through each cell's chuckhole. Smith could not monitor both Alexander and Mason at the same time.

After receiving his meal tray and eating, Hood brought his tray back to the chuckhole. As Hood placed the tray into the chuckhole, he blacked out, losing consciousness and vision. He woke up on his back with a broken, bleeding, partially-severed finger. Two nurses and three jail guards were in the cell with him. A nurse told Hood that he had suffered a seizure. Hood eventually went to the hospital and received treatment from a surgeon. The surgeon decided that Hood did not need surgery and instead reattached and repaired the finger with "less invasive methods." Doc. 43 ¶ 31. Hood's finger is still damaged, and his injury prevents him from working as a barber anymore, which is his preferred line of work.

---

[1] The facts in the background section are taken from Hood's Second Amended Complaint and are presumed true for the purpose of resolving defendant's motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007).

Smith and other jail guards who responded to Hood believed that Hood's injury was caused by the chuckhole. Hood sought an explanation from the jail's officials for his injury, but he only learned that an investigation had determined Hood's injury was caused by a "medical condition." *Id.* ¶ 49.

Hood believes that Alexander or Mason intentionally slammed Hood's chuckhole door and hurt Hood's finger. He alleges that Smith was aware that Hood was in potential danger but did nothing. But because Hood blacked out at the moment of the incident, he is not sure if Alexander or Mason actually hurt him. Other inmates told Hood that they saw Smith slamming chuckhole doors closed around the time Hood was hurt. They also told him that when they tried to alert Smith that Hood was unconscious, Smith ignored them and left Hood unattended for a period of time.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**ANALYSIS**

Hood alleges that Smith failed to protect him—or, alternatively, used excessive force against him—and then was deliberately indifferent to his need for medical care. He also alleges that Lake County is liable for policies and practices that caused Smith's wrongdoing and for indemnification of Smith.

**I.     Claims Against Smith**

**A.     Failure to Protect (Count I)**

Hood alleges that Smith did not protect him from danger. Because Hood was a pretrial detainee, the Fourteenth Amendment's due process clause protects him from harm, and the Court looks to Eighth Amendment case law for guidance because "the protections of the Fourteenth Amendment's due process clause are at least as broad as those that the Eighth Amendment affords to convicted prisoners." *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 664 (7th Cir. 2012). Smith argues that Hood's failure to protect claim fails because he has not alleged facts supporting such a claim and because Smith is entitled to qualified immunity.

"To state a failure to protect claim, a plaintiff-inmate must allege that (1) 'he is incarcerated under conditions posing a substantial risk of serious harm,' and (2) defendant-officials acted with 'deliberate indifference' to that risk." *Brown v. Budz*, 398 F.3d 904, 909 (7th Cir. 2005) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)). There is an objective and a subjective component to the claim. *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015). Hood must allege that he was exposed to an objectively serious harm. *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008) (noting that when there is "a cobra lurking in the grass" of the prisoner's cell, the objective prong is satisfied). He also must allege that Smith knew that Hood faced the substantial risk of serious harm and disregarded the

risk by "failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. at 847. Hood alleges that Smith "was aware of the general risks that unmonitored inmates [like Alexander and Mason] pose" and that Smith was aware that cell block workers and the chuckhole could cause harm to the inmates in Hood's cell block. Doc. 43 ¶ 58. He also alleges that Smith failed to take the necessary measures to monitor Alexander and Mason and to mitigate the cell block workers' risks to the other inmates in the cell block. Yes, the cell door separated Alexander and Mason from Hood. But Hood alleges that the chuckhole was both the gap in protection and the tool that Alexander or Mason used to hurt him. Therefore, Hood's allegations sufficiently allege the objective and subjective elements of a failure to protect claim.

Smith argues that these allegations only describe negligence, not intentional conduct. Hood, however, alleges that Smith knew the danger that she created by allowing Alexander and Mason to distribute and collect trays through the chuckhole and ignored that danger. Therefore, Hood's allegations of Smith's "acts and omissions, given the knowledge of the alleged risk posed by [Alexander and Mason, working without full supervision in the cell block], sufficiently state a failure to protect claim." *Brown*, 398 F.3d at 916.

Smith also argues that she is entitled to qualified immunity from the failure to protect claim. Qualified immunity attaches when an official's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, --- U.S. ----, 137 S. Ct. 548, 551, 196 L. Ed. 2d 463 (2017) (quoting *Mullenix v. Luna*, --- U.S. ----, 136 S. Ct. 305, 308, 193 L. Ed. 2d 255 (2015)). "In other words, qualified immunity shields from liability [defendants] who act in ways they reasonably believe to be lawful." *Ewell v. Toney*, 853 F.3d 911, 919 (7th Cir. 2017) (internal quotation marks omitted) (quoting *Jewett v. Anders*, 521 F.3d 818, 822 (7th Cir. 2008)). Once raised by the defendant, "a

plaintiff must show: (1) that the defendant violated a constitutional right, and (2) that the right was clearly established at the time so that it would have been clear to a reasonable officer that her conduct was unlawful in the situation." *Id.* Hood provides no meaningful response to Smith's argument.

Smith argues that Hood's silence disposes of the claim; but that is not so. Smith's argument for qualified immunity is cursory and underdeveloped. It is Smith's initial burden to properly put the defense before the Court. *Gary v. Sheahan*, No. 96 CV 7294, 1997 WL 201590, at *10 (N.D. Ill. Apr. 18, 1997). Beyond citing the qualified immunity standard, Smith barely addresses qualified immunity for Hood's failure to protect claim, which is insufficient to put the defense at issue. *See Curtis v. Wilks*, 704 F. Supp. 2d 771, 786–87 (N.D. Ill. 2010) (noting that an argument that fails to apply the law to the facts "in any meaningful fashion" waives the argument); *Am. Homeland Title Agency, Inc. v. Robertson*, No. 115CV02059SEBDKL, 2016 WL 5661562, at *10–11 (S.D. Ind. Sept. 30, 2016) (declining to address cursory and undeveloped arguments on qualified immunity). Smith does not address why Hood fails to allege the deprivation of a clearly established right. She only argues that any alleged wrong was a mere mistake, so she is entitled to qualified immunity because qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." Doc. 51 at 15 (quoting *Ahscroft v. al-Kidd*, 563 U.S. 731, 743, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011)). But as discussed, at this stage, Hood alleges that Smith knew of risks substantial enough to make her indifference knowing and deliberate. Hood alleges Smith's deliberate failure to monitor other inmates who cause harm to another Hood by slamming chuckhole doors. These allegations are enough to plead the violation of a clearly established right and that Smith was on notice her behavior was likely unlawful. *Alvarado v. Litscher*, 267

F.3d 648, 651 (7th Cir. 2001) (noting that courts hesitate to dismiss complaints on qualified immunity grounds "[b]ecause an immunity defense usually depends on the facts of the case" beyond the allegations of the complaint). The Court will not grant Smith's motion for qualified immunity at the pleading stage.

## B.     Excessive Force (Count III)

Hood also alleges that the other inmates may not have attacked him and, instead, Smith attacked him in an alleged use of excessive force. Smith argues that Hood cannot allege that she intentionally closed the chuckhole door on Hood when he already alleges that Mason or Alexander did the same thing. "[A]t the pleadings stage, plaintiffs are allowed to plead in the alternative, even if this creates inconsistencies. . . . Plaintiffs may plead inconsistent facts . . . as long as plaintiffs are legitimately in doubt about the facts in question." *Carlson v. Nielsen*, No. 13 CV 5207, 2014 WL 4771669, at *3 (N.D. Ill. Sept. 24, 2014) (internal quotation marks omitted) (citation omitted); Fed. R. Civ. P. 8(d). When a plaintiff is unsure who caused his injury, he may allege those claims in the alternative as long as they are both plausible. 5 Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ., § 1282 (3d ed. 2017).

Although Hood did not plead the excessive force claim as an alternative to his failure to protect claim, the Court understands that Hood has alleged an alternative claim. Hood alleges that Alexander or Mason slammed his chuckhole door and that other inmates told him they saw Smith slamming chuckhole doors too. These facts, at the pleading stage, do not bar either the failure to protect claim or the excessive force claim. There is no need to require Hood to replead where he alleges that he was unable to know who injured him at the time of his injury and his two theories are plausible. *Leis v. Davidson*, No. 13 C 1106, 2013 WL 3864999, at *3 (N.D. Ill. May 30, 2013) (collecting cases, finding that alternative claims were understood without

7

requiring repleading that would be "unduly formalistic"). While Smith suggests that Hood already knows that the evidence does not support one of the alternative allegations, that is an argument for a Rule 11 motion. At this stage, the Court denies Smith's motion to dismiss Count III.

C.     **Deliberate Indifference to Medical Needs (Count V)**

Hood also alleges that regardless of whether an inmate or Smith harmed him, Smith was deliberately indifferent to his medical needs after the attack. To state a claim, Hood "must demonstrate two elements: 1) an objectively serious medical condition; and 2) an official's deliberate indifference to that condition." *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). Smith argues that Hood fails to allege that Smith is the official he claims was deliberately indifferent to his medical needs. Hood alleges that inmates told Smith that Hood suffered a seizure and that she ignored these alerts, thus alleging that Smith was the prison official with the opportunity to address his seizure and that she ignored his condition. These allegations place Smith on notice that the claim is against her.

Smith also argues that Hood alleges she was negligent, not deliberately indifferent. "[N]egligence, even gross negligence, does not violate the Constitution." *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010). Instead "[o]nly deliberate indifference or worse in the face of a serious medical need will do." *Id.* Hood alleges that Smith chose to ignore inmates' warnings that Hood had suffered a seizure and that Smith's decision to ignore the inmates delayed Hood's treatment. His allegations describe deliberate indifference rather than mere negligence.

Smith also argues that Hood fails to allege the length of the delay in treatment caused by Smith's deliberate indifference or that the delay caused any added harm. A delay in treatment that exacerbates an injury or unnecessarily prolongs pain may show deliberate indifference.

8

*Perez v. Fenoglio*, 792 F.3d 768, 777–78 (7th Cir. 2015) (citations omitted). "Whether the length of delay is tolerable depends upon the seriousness of the condition and the ease of providing treatment" and "even brief, unexplained delays in treatment may constitute deliberate indifference." *Id.* (citations omitted). A delay to treat a finger injury may support a deliberate indifference claim. *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007) (reviewing prisoner's claim that he was denied treatment for two days for open-dislocation of finger). Hood alleges that Smith prevented immediate medical care for his severed finger for a "significant period of time." Doc. 43 ¶ 78. Because he was unconscious the entire time that he alleges Smith delayed his treatment, the length of the delay may be unavailable to Hood until discovery ends. Hood also alleges that his severed finger needed significant treatment and that he can no longer work as a barber with his hand. At the pleading stage, Hood's allegations are enough to state a claim.

## II.   Claims Against Lake County (Counts II & IV)

Hood names Lake County as a Defendant in his Second Amended Complaint. Yet Smith admits that Lake County is not the proper defendant for his custom, policy, and practice claim in Count II and wants to file a new claim against Lake County Sheriff Mark C. Curran, Jr. Because Hood concedes that he cannot bring his § 1983 claim against Lake County, the Court grants the motion to dismiss Count II. The Court, however, declines to address Defendants' argument that Hood cannot bring a similar § 1983 claim against Sheriff Curran. Until Hood proposes a third amended complaint, there is no claim against the Sheriff for the Court to review.

Hood also brings a claim in Count IV against Lake County for indemnification. Lake County argues that the indemnification claim is moot without any valid claims against Smith. Because the Court finds that Hood states a claim against Smith, that argument fails. Lake County also suggests that Smith is not an employee but, instead, an independent contractor they

do not need to indemnify.  But Hood alleges that Smith was Lake County's employee, and Lake County presents no argument to refute that allegation.  Therefore the Court denies the motion to dismiss Count IV against Lake County.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion to dismiss [50].  The Court dismisses Count II against Lake County.  The Court grants Smith until June 16, 2017 to answer the complaint.  The Court strikes the status date set for June 6, 2017 and resets it to June 21, 2017.

Dated: June 1, 2017

_____
SARA L. ELLIS
United States District Judge